UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,             No. 1:09-CR-256

             vs.                     Hon. Janet T. Neff
                                        United States District Judge

ALAN THOMAS BAUER, II,

                      Defendant.

_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PRO SE MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

Approximately 15 months into his 3-year term of supervised release, the defendant, Alan Bauer, II, has filed a motion for early termination. Mr. Bauer has done well on supervised release but, after consulting with his probation officer, the government objects to early termination at this point in time because (1) he was convicted of a very serious crime, arson; (2) his criminal history includes two violent crimes, including an aggravated assault involving a "sulfuric acid bomb"; (3) he has served less than half of his three-year term of supervised release; (4) he has a long substance abuse history; and (5) the structure provided by supervised release would be helpful to ensure his continued success.

### Facts

#### 1. The Montcalm County Arsons

On Saturday, January 7, 2006, a Stanton, Michigan restaurant named Jerry's Drive-In burned down. (Presentence Report, pp. 6-7, 13-16.) The ATF determined

the fire was deliberately set.  (*Id.*)  The owner of the building, Scott Sowles, had entered into a criminal conspiracy with his longtime friend, Steve Stewart, to have Jerry's Drive-In destroyed by fire so that an insurance claim could be made.  (*Id.*)  Mr. Bauer was the "torch" hired to set the fire inside Jerry's Drive-In.  (*Id.*)  He was supposed to be paid $3,500 in exchange for setting the fire.

On Tuesday, January 24, 2006, a rental storage business in Stanton named Ray's Storage burned down.  (*Id.* at pp. 8, 14-16)  ATF determined that this fire, too, had been deliberately set.  The owner of the business was not involved in the arson scheme.  (*Id.*)  Instead, Sowles and Stewart had conspired to burn down Ray's Storage as a "diversion" to mislead law enforcement investigating fires in Stanton, Michigan. (*Id.*)  Again, Mr. Bauer was the "torch" hired to light the fire.  (*Id.*)

On Sunday, February 5, 2006, a lumber storage building named Stanton Lumber & Hardware, in Stanton, Michigan, burned down.  (*Id.*)  Again, ATF determined the fire was caused by arson.  (*Id.*)  The owner of the building was Steve Stewart.  (*Id.*)  Like Mr. Sowles, Mr. Stewart was facing financial difficulties and had a considerable insurance policy covering his business property.  (*Id.*)  Stewart engaged the services Mr. Bauer to burn down the lumber storage building.  (*Id.*)  An impatient man, Mr. Stewart decided to set the fire himself and elected not to wait for Mr. Bauer to act.  (*Id.*)

Sowles, Stewart and Bauer eventually pled guilty to various crimes arising from their arson scheme.  For his part, Mr. Bauer pled guilty to two counts of arson for the fires he set at Jerry's Drive-In and Ray's Warehouse, in violation of 18 U.S.C.

§ 844(i).  (*Id.* at p. 11.)  At the time of his guilty plea, Mr. Bauer admitted entering those buildings and setting the fires.  (*Id.*)  In the course of a voluntary statement to the ATF, Mr. Bauer also admitted he had earlier been involved in a separate arson scheme with Steve Stewart.  (*Id.* at p. 12, 18.)  On that earlier occasion, Stewart had arranged for Mr. Bauer to burn down a rental property located at 124 Vine Street in Stanton, Michigan.  (*Id.*)  That arson fire took place in 2003.  (*Id.*)

### 2. Mr. Bauer's Criminal History and other Characteristics

Mr. Bauer's criminal history consists of three prior convictions: a 1989 conviction for aggravated assault, a 1999 OWI, and a 2008 conviction for conspiracy to commit assault with intent to do great bodily harm less than murder.  (*Id.* at p. 23.)  The 2008 conviction arose out of a September 11, 2008, bombing in Montcalm County.  (*Id.*)  On that date, Montcalm County Sheriff's deputies responded to a complaint at 11197 Arloa Drive, Montcalm County, after a box placed in the driveway of the residence, near a vehicle, exploded in Derek Leman's face after being opened. (*Id.*)  Mr. Leman was not at the scene when deputies arrived and had been taken away by ambulance.  (*Id.*)  Gena Corwin, Leman's girlfriend, informed deputies of her suspicion that her ex-boyfriend, Mr. Stewart, may have been the person to do such a thing.  (*Id.*)

Mr. Bauer pled no contest, but had not yet been sentenced on the bombing charge at the time of his federal sentencing.  (*Id.*)  According to the PSR, there was a sentencing agreement that Mr. Bauer was to serve no more time on the bombing

charge than on the federal case, and his state sentence would run concurrently with the federal sentence.  (*Id.*)

A newspaper article written following Stewart's state court trial for the bombing provided further details about the explosive device, described as a "sulfuric acid bomb," the permanent injuries suffered by the victim, and Mr. Bauer's role, which involved building and rigging the device:

> MONTCALM COUNTY – A man who planted a sulfuric acid bomb that maimed a rival in a love triangle was convicted of a felony today for the Sept. 11, 2008 attack on Derek Lehman outside the victim's home near Greenville.
>
> A jury today convicted Steve Stewart of possession or use of a harmful device causing injury after Prosecutor Andrea Krause convinced the panel that the 40-year-old placed the explosive that resembled a wooden duck trap near Lehman's truck.
>
> Lehman opened the box and was hit with an acid blast that temporarily blinded him, left him with permanent vision damage and maimed his extremities. Lehman, 30, crawled to a neighbor's house for help and was eventually transported to Spectrum Health United Memorial Hospital.
>
> Due to the initial uncertainty of the toxic chemical, the hospital was partially shut down for six hours and employees and rescuers who had contact with Lehman were put through a decontamination process. Nobody else suffered injury from the liquid acid.
>
> Authorities tied Stewart to the crime based on his jealousy that Lehman was dating his ex-girlfriend. Stewart was trying to woo her back while at the same time plotting against Lehman, investigators said.
>
> Among those who testified against Stewart was Alan Bauer, who built and rigged the explosive device. Bauer earlier pleaded no contest to conspiracy to commit assault with intent to do great bodily harm less than murder.
>
> Bauer's deal with prosecutors was struck a year ago and called for his testimony before being sentenced on the 10-year felony.

Investigators searched Stewart's home the day of the blast and later recovered video surveillance of Bauer dumping materials from the homemade explosive in a gas station trash.

The bombing probe, which involved the FBI and agents from the Bureau of Alcohol, Tobacco and Firearms, also allowed authorities to crack a series of 2006 arsons in Stanton that involved Stewart and Bauer.

The pair and Scott Sowles conspired to burn businesses that Stewart and Sowles owned in a scheme to collect insurance proceeds. Stewart and Sowles were having financial difficulty and paid Bauer to light fires at a Stanton Lumber & Hardware storage building controlled by Stewart and at Sowles' Jerry's Drive-In restaurant.

The trio also torched a third structure unconnected to them to try to throw off investigators, who immediately deemed the other fires suspicious.

*Acid bomber in love triangle found guilty, faces life in prison,*

Mlive.com (Mar. 24, 2011).[1]

The presentence report noted that Mr. Bauer had extensive issues with substance abuse: he began consuming alcohol at age 13, marijuana at 16, and cocaine at 17. (Presentence Report, p.26.) Pennock Hospital records indicated he was admitted to an emergency room there in 2007 for "confusion, substance abuse, and cocaine toxicity." (*Id.*) These records indicated that Mr. Bauer had a "long standing drug dependency problem," was "addicted to pain medication," exhibited "drug seeking behavior" at the hospital, and had participated in "detox programs." (*Id.*) The medical record further stated that:

[Mr. Bauer's] present medications are Lithium and Prozac, which he has been taking inconsistently. The patient also has a drug abuse problem with the use of alcohol in the past and, more lately, the use of crack cocaine. The patient has been hallucinating for the last several days.

---

[1] https://www.mlive.com/news/grand-rapids/2011/03/acid_bomber_in_love_triangle_f.html (last visited October 23, 2019).

The last night, apparently after the use of some medication, he became acutely worse with hallucinations and agitation and was brought to the emergency room. In the emergency room, he was difficult to control and not easily sedated, so he was Pavulonized and placed on a ventilator.

(*Id.*)

### 3. Mr. Bauer's Sentencing and Post-Conviction Filings

On March 17, 2010, the Court sentenced Mr. Bauer to 120 months' in prison and three years of supervised release.  (R.100, Judgement, PageID.333-38.)   Mr. Bauer did not file a direct appeal, but thereafter filed a number of post-conviction motions with the Court seeking various types of relief, including a § 2255 motion alleging ineffective assistance of counsel (PageID.425-37); two second or successive motions under § 2244 (6th Cir. Case Nos. 14-1761 and 16-1405); a motion for appointment of a mitigation specialist (PageID.603); a Fed. R. Civ. P. 60(b) motion (PageID.626-29); and a motion for relief under Fed. R. Crim. P. 36 (PageID.649-53). All of these motions were denied.

### 4. Mr. Bauer's Behavior on Supervision and the Probation Officer's Response to His Early Termination Request

According to the United States Probation Office, Mr. Bauer began supervised release on July 6, 2018, and is scheduled to discharge from supervised release on July 5, 2021.  He has a Post-Conviction Risk Assessment (PCRA) score of Low/Category 2. He has had no known violations while on supervision and there is no information to suggest he is engaged in any criminal activity.   Over the course of supervision, he has complied with the orders of the Court and has maintained stable housing and regular employment at Hearthside Food Solutions as a supervisor.

6

The Probation Officer reports that Mr. Bauer began substance abuse testing in July 2018 and regularly complied with the requirements of drug testing. Due to his sustained sobriety, he was removed from the substance abuse testing program in August 2019, and is not being monitored by random substance abuse tests. He received substance abuse and mental health treatment services from Veteran Affairs (VA), Battle Creek, Michigan. Mr. Bauer's financial obligation to the Court has not been satisfied, but he has consistently made payments toward the outstanding restitution balance of $491,165.53.

The Probation Officer currently supervising Mr. Bauer objects to his early termination request:

> After consulting with the guidelines and recommendations set forth by the Administrative Office, this officer determined Mr. Bauer would not be considered for early termination, as initiated by the probation office. It is noted that Mr. Bauer does have a violent criminal history and significant substance abuse history. Although he does not have numerous criminal convictions, those he has are very serious in nature and have occurred over the course of 30 years. Although Mr. Bauer has made positive changes while on supervised release, this officer is not in support of early termination from supervision.

## ANALYSIS

The government agrees with the Probation Officer that Mr. Bauer's request for early termination should be denied. He was involved in four arsons and the triggering of a "sulfuric acid bomb." These are not crimes one sees every day and, given their seriousness, early termination of supervised release is not "warranted by the conduct of the defendant … and the interest of justice." 18 U.S.C. § 3583(e). In addition, Mr. Bauer does not state any ground for terminating his supervised release

other than the fact that he has complied with the conditions of release and wants the remainder of his term of supervised release to be terminated.  He does not contend that supervision is overly burdensome or interfering with any relevant aspect of his life or work.   Given that he cites no pressing need for early termination, his request should be denied.

Title 18, United States Code Section 3583 allows the Court to terminate a term of supervision "any time after the expiration of one year of supervised release," if, after considering the § 3553 factors, the Court "is satisfied that such action is warranted by the conduct of the defendant … and the interest of justice."

> (e) Modification of conditions or revocation. - The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5) and (a)(6)-
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice....

18 U.S.C. § 3583(e).

The Court's decision whether to terminate a term of supervised release before the expiration of the term under 18 U.S.C. § 3583(e) is reviewed "under the narrow abuse of discretion standard." *United States v. Suber*, 75 F. App'x 442, 443 (6th Cir. 2003), citing *United States v. Lowenstein,* 108 F.3d 80, 85-86 (6th Cir.1997). Under "[t]he plain language" of § 3583(e) "a district court must conclude that the early termination of supervised release is warranted *both* by the individual's conduct and also by the interest of justice."  *Id.,* citing *United States v. Pregent,* 190 F.3d 279, 282

8

(4th Cir.1999) (emphasis added). "The phrase 'the interest of justice' gives the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period." *Id.*

Here, both the interests of justice and the § 3553(a) factors weigh against early termination.   The first § 3553(a) factor requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  Here, Mr. Bauer pled guilty to two arsons, and was held responsible for two more arsons.  Almost more concerning, he had a prior conviction for his involvement in a 2008 "sulfuric acid bomb" attack on an individual, and an earlier aggravated assault in 1989, the details of which were not provided in the PSR.  Early termination of Mr. Bauer's term of supervised release would not reflect the serious nature of these offenses.

The second factor the Court must consider is the need for the sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).  As the Probation Officer noted, Mr. Bauer does not have many prior convictions, but those he does have are very serious and stretch back over a period of 30 years.  This raises the risk that he may recidivate.   Here, Mr. Bauer has completed less than half of his three-year term.   While supervised release is not a strictly punitive measure, it does constitute part of a defendant's total sentence.  Releasing Mr. Bauer after completing less than half of his term would minimize the total sentence imposed by the Court and fail to deter future criminal conduct.  As a result, the second factor weighs against early termination of supervised release.

9

Third, the Court must consider the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).  As has been discussed, Mr. Bauer pled guilty to arson and has two prior convictions for violent assaults.  Given this type of criminal conduct, early termination of supervised release in this matter does not serve the purpose of protecting the public.

Fourth, the Court must consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).  Mr. Bauer does not state any grounds for terminating his supervised release, other than the fact that he has complied with the conditions of release and wants the remainder of his term of supervised release to be terminated. Still, the best way to reduce the chance of recidivism in this matter and ensure that Mr. Bauer is receiving correctional treatment is to maintain the status quo. The United States Probation Office can ensure that Mr. Bauer is complying with his conditions of supervised release and assist him in accessing resources that will ensure his rehabilitation. As a result, the fourth factor weighs against early termination of supervised release.

Fifth, and finally, the Court must consider the kinds of sentence and the sentencing range established for the offense committed, any pertinent policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a)(4)-(6). Here, Mr. Bauer was sentenced to a three-year term of supervised release based on the statute of conviction.  Ultimately, the term of

supervised release in this matter is supported by the sentencing guidelines and the public policy considerations underlying the purpose of supervised release.  This factor, too, weighs against early termination.

## CONCLUSION

In sum, the relevant factors under 18 U.S.C. § 3553(a) weigh against early termination of Mr. Bauer's supervised release. While it appears that he has been complying with the terms of supervision, the interests of justice weigh in favor of continued supervision. The term of supervised release imposed in this matter is intended to aid in his rehabilitation and reduce the chance of recidivism.  Accordingly, his request for early termination should be denied.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated:  October 23, 2019            /s/ Clay Stiffler
                                    CLAY STIFFLER
                                    Assistant United States Attorney
                                    P.O. Box 208
                                    Grand Rapids, Michigan  49501-0208
                                    (616) 456-2404

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2019, the foregoing document was electronically filed.  I further certify that a copy of the foregoing document will be mailed via U.S. Mail to the defendant at his address of record with the United States Probation Office because he is not registered to receive the document by the Court's electronic filing system:

> Alan Thomas Bauer II
> 224 W. Summit Street
> Stanton, Michigan 48888

> /s/  Clay Stiffler
> CLAY STIFFLER
> Assistant United States Attorney
> P.O. Box 208
> 330 Ionia Avenue, N.W.
> Grand Rapids, Michigan 49501-0208
> (616) 456-2404